**AFFIRM; and Opinion Filed May 31, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00379-CR

### DAQUALYN DEVONTA DAVIS, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 195th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F16-15356-N**

## MEMORANDUM OPINION
Before Justices Schenck, Osborne, and Reichek
Opinion by Justice Schenck

Appellant Daqualyn Devonta Davis, at the age of fifteen years, was charged with delinquent conduct having allegedly participated in a capital murder. On March 29, 2016, the juvenile court entered an order waiving jurisdiction and transferring appellant to the criminal district court for prosecution. TEX. FAM. CODE ANN. § 54.02. Thereafter, the State moved to reduce the offense charged from capital murder during the commission of a robbery to aggravated robbery. The district court granted the motion and appellant entered an open plea of guilty before the court, made a judicial confession, and proceeded to a punishment hearing. On March 27, 2018, the district court sentenced appellant to ten years' confinement and certified his right to appeal. Appellant filed his notice of appeal in the district court the same day.

In two issues, appellant challenges the juvenile court's transfer order and the sentence imposed by the district court. We overrule appellant's issues and affirm the district court's judgment. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

## BACKGROUND

On November 5, 2015, appellant's uncle, Tim Stanfield, approached appellant and appellant's older brother and told them he needed help moving clothes, which appellant understood meant he needed help committing a robbery. Several people participated in the robbery. The target of the robbery was Cecil Williams and his home. During the course of the robbery, Williams was fatally shot.[1]

Appellant was charged with delinquent conduct in connection with the robbery and murder of Williams. The State filed a Petition for Discretionary Transfer in the juvenile court. On March 29, 2016, the juvenile court held a hearing to consider the State's petition. At the hearing, appellant was admonished and he, joined by his attorney, waived his right to a full transfer hearing and agreed to the transfer. A stipulation of evidence was entered into the record during the hearing. Appellant confirmed that he signed the stipulation freely and voluntarily. The stipulation included a statement that "[appellant] wishes to freely and voluntarily waive the right to confront and cross examine witnesses and agrees that the Court may transfer him to the Criminal Court for the offense alleged in the Petition for Discretionary Transfer." The juvenile court granted the State's petition and entered an order that states, in part, that the court finds that "[appellant] and his attorney waived the discretionary transfer hearing and have agreed to the existence of the elements and considerations in favor of transfer to a Criminal Court for prosecution as an adult." Per the juvenile court's order, appellant's case was transferred to the jurisdiction of the 195th Judicial District

---

[1] It appears someone other than appellant shot Williams.

Court in Dallas County, where he stood trial, certified as an adult, against the charge of first-degree felony aggravated robbery.

On March 26, 2018, appellant appeared before the district court to enter a plea on the offense of aggravated robbery. The trial court admonished appellant of his rights, appellant waived those rights, and entered an open plea of guilty. The State presented the juvenile court file for record purposes; appellant's signed, written, and voluntary judicial confession; and the State's compliance with the Michael Morton Act.[2] Both sides rested on the issue of guilt and proceeded to the punishment phase of trial.

During the punishment phase, the State presented evidence of other crimes appellant had committed. Ed Bolton testified that on November 10, 2015, he was working at a 7-Eleven store. Around 3:45 a.m., a man entered the store holding a revolver, jumped the counter, and demanded that he open the register. A second man entered and demanded that Bolton open a second register. Bolton indicated that the robbers took cash, his cell phone, and lottery tickets. Appellant and his brother were subsequently arrested for that robbery.

Detective Schiver testified she is a robbery detective and was assigned to investigate a robbery that occurred on November 7, 2015, at a convenience store on Harry Hines Boulevard. The robbers took cash, cigarettes, checks, and lottery tickets. Detective Schiver was able to track down the lottery tickets. Twenty-three minutes after the robbery, the lottery tickets were cashed at a 7-Eleven store. Detective Schiver obtained the surveillance video from the 7-Eleven store, which showed two individuals cashing the lottery tickets wearing the same clothing as the robbers at the convenience store on Harry Hines. From the video footage, she identified appellant and his brother as suspects.

---

[2] The Michael Morton Act requires prosecutors to disclose to a criminal defendant any exculpatory evidence. TEX. CODE CRIM. PROC. ANN. art. 39.14(h).

Appellant called the deceased complainant's brother to testify. He testified that L.J. Toliver, one of the individuals involved in the robbery and presumptively one of the instigators, was related to Williams by marriage. He described Toliver as a manipulative "Charles Manson" type. Appellant had previously testified against Toliver in Toliver's criminal proceeding. Williams' brother credited appellant for doing so at the risk of repercussions from appellant's brother and family. He asked the court to consider giving appellant consequences other than punishment.

Appellant also called his sister to testify. She indicated she would be available to appellant and could provide housing for him if he received a probated sentence.

Finally, appellant testified that he took full responsibility for the robbery and murder of Williams as well as the aggravated robberies of the convenience stores. He explained that in 2015 he lost his father and relied heavily on his older brother for support. He indicated that his mother used drugs and he often lived with his aunt, who also used drugs. He himself used marijuana, methamphetamine, and Xanax bars. He indicated that money for drugs and food came from fraudulent schemes and stealing. He dropped out of school in the seventh grade because he chose to support his drug habit rather than buy clothing for school. His first adjudication was for assault on a public servant when he was in the seventh grade. He acknowledged that he was not able to successfully complete probation for that charge, commenting that his mother did not participate in the required programs. While on juvenile probation, he failed a drug test, did not take drug classes as ordered, failed to report to his probation officer, and violated curfew. The district court sentenced appellant to ten years' confinement. This appeal followed.

## DISCUSSION

### I. Transfer Order

In his first issue, appellant claims the juvenile court abused its discretion when it waived jurisdiction and transferred him to the criminal district court for criminal proceeding. More particularly, appellant claims the transfer order lacks the specificity and analysis required by the family code. TEX. FAM. CODE ANN. § 54.02(h). As an initial matter, we note that we clearly have jurisdiction over appellant's appeal of his conviction. *See* TEX. CODE CRIM. PROC. ANN. art. 44.02. As to appellant's complaint concerning the transfer order, we recognize that over the years the Legislature has enacted various statutes that affect the timing of such a challenge.

Before January 1, 1996, the Juvenile Justice Code, which is part of the family code, provided for an immediate appeal from a juvenile court's transfer order. *See* Acts 1973, 63d Leg., ch. 544, § 1. p. 1483, eff. Sept. 1, 1973. To complain of non-jurisdictional error in the transfer process, the defendant had to appeal the transfer order immediately to the court of appeals. *Adams v. State*, 827 S.W.2d 31, 33 (Tex. App.—Dallas 1992, no writ). Failure to do so, waived any claim of non-jurisdictional error following final judgment.[3] *Id.*

In 1995, the Legislature amended the Juvenile Justice Code, striking the provision that permitted a direct appeal of a transfer order, and revising the Texas Code of Criminal Procedure to provide, in article 44.47, that a person could appeal a transfer order only in conjunction with the appeal of a conviction of the offense for which the defendant was transferred to criminal court. Acts 1995, 74th Leg., ch. 262, § 48, p. 2546, § 85, p. 2584, eff. Jan. 1, 1996. Accordingly, a defendant could not file an interlocutory appeal of the transfer order and was required to wait until he was convicted to complain about error in the transfer process.

In 2015, the Legislature again amended the Juvenile Justice Code to reintroduce the interlocutory appeal from a juvenile court's transfer order, for orders issued on or after September

---

[3] Jurisdictional errors are (1) lack of jurisdiction over the person, (2) lack of jurisdiction over the subject matter, (3) lack of jurisdiction to enter the particular judgment, or (4) lack of capacity to act as a court. *Id.* at 34.

1, 2015, and repealed article 44.47 of the code of criminal procedure. *See* Act of May 12, 2015, 84th Leg., R.S., ch. 74, §§ 3–4, sec. 56.01(c)(1)(A), 2015 Tex. Sess. Law Serv. 1065, 1065.[4] Section 56.01 of the Juvenile Justice Code now provides, in relevant part, "An appeal *may* be taken: except as provided by Subsection (n), [which is not applicable here] by or on behalf of a child from an order entered under: (A) Section 54.02 respecting transfer of the child for prosecution as an adult[.]" FAM. § 56.01(c)(1)(A) (emphasis added). The revised statute poses potentially difficult questions with respect to preservation of the right to appeal after final judgment. Of course, the statute uses the term "may," not "must," suggesting, perhaps, that an immediate appeal of a transfer order is optional, not mandatory, as is the case generally with interlocutory appeals. Likewise, allowing a party the option to await a final judgment promotes judicial economy, as cases where a defendant is later acquitted or placed on probation are likely to become moot in the interim avoiding the need for any appeal at all. On the other hand, the Legislature may have intended to revert back to the pre-1996 mandate that non-jurisdictional complaints be raised immediately and the court of criminal appeal's determination in the 1985 case of *Ex parte Calvin* that it will review juvenile proceedings only where a jurisdictional defect is raised. *See Ex parte Calvin*, 689 S.W.2d 460, 463 (Tex. Crim. App. 1985).

In any event, we need not determine whether an interlocutory appeal of a non-jurisdictional complaint concerning a transfer order is optional or mandatory because appellant agreed to the transfer foreclosing his right to complain about the transfer. *See e.g. In re J.Z.B.*, No. 05-18-00887-CV, 2019 WL 1486913, at *2 (Tex. App.—Dallas Apr. 4, 2019, no pet. h.) (mem. op.) (mother waived any error by agreeing to the terms of SAPCR during a hearing); *In re D.J.*, No. 07-18-00386-CV, 2019 WL 946919, at *3 (Tex. App.—Amarillo Feb. 26, 2019, pet. filed) (mem.

---

[4] Because of the changes to the family code and the code of criminal procedure, any party appealing a court of appeal's decision no longer goes to the court of criminal appeals but to the supreme court, which has jurisdiction over juvenile appeals. *In re C.A.P.*, No. 10-18-00193-CV, 2018 WL 5662131, at *1 n.1 (Tex. App.—Waco Oct. 31, 2018, pet. denied).

op.) (party waived challenge to conservatorship terms by agreeing to terms during hearing); *In re T.G.*, No. 09-16-00250-CV, 2016 WL 7157242, at *4 (Tex. App.—Beaumont Dec. 8, 2016, no pet.) (mem. op.) (by agreeing to terms of SAPCR order during hearing, mother waived error respecting those terms).

We overrule appellant's first issue.

### 2. SENTENCE

Appellant's second issue challenges the sentence the district court imposed. Appellant acknowledges that his sentence is within the punishment range, but asserts because he was easily influenced by others, desires to be someone different than he was when he committed crimes, and has shown remorse, the trial court abused its discretion in sentencing him to ten years' confinement. Appellant asserts the trial court failed to give weight to Williams' brother's and his sister's testimony that urged probation is the proper punishment. Appellant further urges that a sentence of imprisonment was not necessary to prevent the recurrence of the alleged offenses and that the sentence did not satisfy the objective of rehabilitating appellant.

The State responds that appellant failed to preserve this challenge for appellate review, and alternatively, the sentence is proper given appellant's involvement in a capital murder and his assaultive and violent juvenile criminal history.

To preserve error for appellate review, the record must show appellant made a timely request, objection, or motion. APP. P. 33.1(a)(1). An appellant may not assert error pertaining to his sentence or punishment where he failed to object or otherwise raise such error in the trial court. *Cook v. State*, 824 S.W.2d 634, 643 (Tex. App.—Dallas 1991, pet. ref'd) (citing *Mercado v. State*, 718 S.W.2d 291, 296 (Tex. Crim. App. 1986)). Appellant contends that by requesting probation, he effectively objected to the imposition of any sentence. We disagree. A request for leniency is not an objection that the sentence imposed is arbitrary or disproportionate.

Appellant did not object when he was sentenced, nor did he file a motion for new trial addressing this complaint. Accordingly, he has not preserved the issue for appellate review. *See Castaneda v. State*, 135 S.W.3d 719, 723 (Tex. App.—Dallas 2003, no pet.); *see also Hartfield v. State*, 05-99-01887-CR, 2000 WL 348569, at \*1 (Tex. App.—Dallas Apr. 5, 2000, no pet.) (not designated for publication) (holding plea for community supervision does not constitute sufficient objection to preserve issue of disproportionate sentencing).

Moreover, appellant's claim concerning his sentence would fail even if it had been properly preserved below. Generally, a punishment within the statutory limits will not be excessive, cruel, or unusual in any given case. *State v. Simpson*, 488 S.W.3d 318, 323 (Tex. Crim. App. 2016). Moreover, in light of appellant's involvement in a capital murder and his assaultive and violent juvenile criminal history, it was reasonable for the trial court to impose a prison sentence. *See* TEX. PENAL CODE ANN. § 1.02(a)(A) (penal code also recognizes objective of deterrence).

We overrule appellant's second issue.

**CONCLUSION**

We overrule appellant's issues and affirm the district court's judgment.

/David J. Schenck/  
DAVID J. SCHENCK  
JUSTICE

DO NOT PUBLISH  
TEX. R. APP. P. 47

180379F.U05



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

DAQUALYN DEVONTA DAVIS,
Appellant

No. 05-18-00379-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 195th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F16-15356-N.
Opinion delivered by Justice Schenck.
Justices Osborne and Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 31st day of May, 2019.